IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| TOKAI CARBON CB, LTD., § | |
| § | |
| *Plaintiff,* § | |
| § | |
| v. § | CIVIL ACTION NO. 3:25-CV-01265-X |
| § | |
| GUIDEONE NATIONAL INSURANCE § | |
| COMPANY, LIBERTY SURPLUS § | |
| INSURANCE CORPORATION, § | |
| GENERAL SECURITY INDEMNITY § | |
| COMPANY OF ARIZONA, ACE § | |
| AMERICAN INSURANCE COMPANY, § | |
| TOKIO MARINE AMERICA § | |
| INSURANCE COMPANY, HDI GLOBAL § | |
| SPECIALTY SE, NATIONAL UNION § | |
| FIRE INSURANCE COMPANY OF § | |
| PITTSBURGH, PA, § | |
| § | |
| *Defendants.* § | |

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Tokai Carbon CB, Ltd. ("***Plaintiff***" or "***Tokai Carbon***"), files this Original Complaint against Defendants GuideOne National Insurance Company, Liberty Surplus Insurance Corporation, General Security Indemnity Company of Arizona, Ace American Insurance Company, Tokio Marine America Insurance Company, HDI Global Specialty SE, and National Union Fire Insurance Company of Pittsburgh, PA (collectively, the "***Insurers***"). This case involves a dispute over insurance coverage for losses sustained at Plaintiff's carbon black manufacturing facility due to the destruction of two high-speed fans. Tokai Carbon would respectfully show the Court as follows:

## I. JURISDICTION & VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1332(a) because (1) Tokai Carbon and the Insurers are not citizens of the same state; and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Tokai Carbon is a registered Limited Partnership and has its principal place of business in Fort Worth, Texas. Its members are (1) TCCB US Ltd., (2) TCCB Genpar LLC, and (3) Tokai Carbon US Holdings, Inc. TCCB US Ltd. is a limited partnership organized in Texas and has its principal place of business in Fort Worth, Texas. It has two members, TCCB Genpar LLC and Tokai Carbon US Holdings, Inc. TCCB Genpar LLC was formed in Delaware and has its principal place of business in Fort Worth, Texas. It has one member, Tokai Carbon US Holdings, Inc., which is incorporated in Delaware and has its principal place of business in Charlotte, North Carolina. Accordingly, Tokai Carbon is a citizen of Texas, Delaware, and North Carolina.

3. GuideOne National Insurance Company is incorporated in Iowa and has its principal place of business in Des Moines, Iowa. GuideOne's registered agent is CT Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

4. Liberty Surplus Insurance Corporation is incorporated in New Hampshire and has its principal place of business in Boston, Massachusetts. Liberty's registered agent is Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, located at 211 East 7th Street, Suite 620, Austin, TX 78701.

5. General Security Indemnity Company of Arizona is incorporated in Arizona and has its principal place of business in Phoenix, Arizona. General Security's registered agent is Messrs. Mendes & Mount, located at 750 Seventh Avenue, New York, New York 10019-6829.

6. Ace American Insurance Company is incorporated in Pennsylvania and has its principal place of business in Philadelphia, Pennsylvania. Ace's registered agent is CT Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

7. Tokio Marine America Insurance Company is organized in New York and has its principal place of business in New York, New York. Tokio Marine's registered agent is CT Corporation System, located at 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

8. HDI Global Specialty SE is incorporated in Germany and has its principal place of business in Hannover, Germany. HDI's registered agent is Messrs. Mendes & Mount, located at 750 Seventh Avenue, New York, New York 10019-6829.

9. National Union Fire Insurance Company of Pittsburgh, PA is a corporation organized under the laws of Pennsylvania with its principal place of business in New York. National Union's registered agent is Messrs. Mendes & Mount, located at 750 Seventh Avenue, New York, New York 10019-6829.

10. The Insurers are engaged in the business of insurance in the State of Texas. The Insurers issued the insurance policies at issue in this lawsuit (described below) to Tokai Carbon in Texas; those policies insured Tokai Carbon's property that is the subject of this lawsuit in Texas—specifically, in Hutchinson County, Texas within the Northern District of Texas; and the Insurers committed the below-described breaches and violations of the Texas Insurance Code in Texas, having both performed its claim investigation in Texas and having sent its correspondence repudiating its obligations to Tokai Carbon in Texas.

11. Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391(b) because, as explained in the facts below, it is the district in which a substantial part of the events

or omissions giving rise to the claim occurred, and a substantial part of the property that is the subject of the action is situated.

## II.  FACTUAL BACKGROUND

12. Tokai Carbon specializes in manufacturing and producing high-quality carbon black, which is a necessary ingredient to make tires, among other things. Tokai Carbon is one of few carbon black manufacturers in the United States.

13. This coverage dispute centers on losses Tokai Carbon sustained at its Borger, Texas facility (the "***Borger Facility***"). Those losses were the result of catastrophic physical damage to certain system components—high-speed fans—that are essential to its production of carbon black. Not only did this physical damage cause Tokai Carbon to incur considerable costs to repair its damaged property, that damage prevented the Borger Facility from operating at full production rates for over two years.

14. By way of background, carbon black is created by processing hydrocarbon fuels within specialized high-temperature processing reactors. This process generates gases, which at the Borger Facility are piped through an environmental control system designed to extract certain substances before the remaining gas can be released as permitted air emissions. This high-tech system, which centers on a catalyst reactor for extraction, converts the removed substances into commercial-grade sulfuric acid, which can then be sold as a commercial product.

15. For the control system's catalyst reactor to work, the gas must be heated to a temperature beyond that which is generated by the facility's processing reactors. To achieve this, as the gas leaves the processing reactor, it is drawn through ducts containing heaters, which raise the gas temperature to the level required by the catalyst reactor. The heated gas is then drawn through a series of ducts into either one of two high-speed draft fans (the "Fans"), which propel the gas into the reactor portion of the system.

16. The catalyst reactor portion of the system requires a design temperature of approximately 750°F. The maximum design temperature for the Fans is approximately 790°F.

17. This system was brought online at the Borger Facility in September 2021. On October 2, 2021, one of the Fans exploded, destroying the fan itself and portions of the environmental control system. With only one fan, the Borger Facility was only able to operate at 60% of the normal operating rate for approximately nine months to effectuate repairs.



Photos of October 2, 2021 Fan Explosion.

18. Tokai Carbon attempted to investigate several possible causes of the fan's catastrophic damage, but ultimately there was no definitive determination as to its cause.

19. Following repairs, on June 26, 2022, the system was brought back online with a new fan in place. Shortly thereafter, the replacement fan exploded.



Photo of June 26, 2022 Fan Explosion.

20. As a result of these explosions, the Borger Facility sustained property damage, requiring Tokai Carbon to incur substantial repair costs and preventing it from operating its facility at full production rates due to the inoperability of its environmental control system.

21. After the second explosion, Tokai Carbon determined that the Fans were not the cause of their own damage. It instead hypothesized that they may have been damaged due to excess heat, generated elsewhere in the system, being directed at the destroyed Fans' location. In particular, it was noted that of the two Fans operating in tandem in the system, the two explosions occurred at the same fan location, while the other fan remained in operation.

22. Based on this working theory, and without understanding what the root cause of the excess heat might be, Tokai Carbon adjusted the positioning of the duct heaters (which sat upstream of the fans) in hopes of reducing any temperature variances that may exist in the ducts.

23. Following these adjustments, no further fan damage occurred. In February 2024, the system was again fully operational—after over two years of operating at reduced rates with only one operable fan.

**A.   Tokai Carbon tendered its loss to its Insurers, and the Insurers hired an engineer to determine the root cause of the Fans' catastrophic damage.**

24.    At the time of the Fans' two explosive events, Tokai Carbon was insured under the following property policies: [1]

    a.   Policy Nos. 099000473, B0509ENGAO2050088, 1000382804-02, FA0067335-2020-1, EPRN18222395, and SCP6481316-00 for the December 2020–2021 policy year, with a combined $200,000,000 in per-occurrence limits (the "*2021 Policies*") (those insurers subscribing to the 2021 Policies, collectively, the "*2021 Insurers*"); and

    b.   Policy Nos. 099002361, B0509ENGAO2151023, 1000382804-03, FA0067335-2021-1, EPRN18652602, SCP6481316-01, and 15804811 for the December 2021–March 2023[2] policy year, with a combined $200,000,000 in per-occurrence limits (the "*2022 Policies*") (those insurers subscribing to the 2022 Policies, collectively, the "*2022 Insurers*").[3]

25.    The Insurers issued these Policies to insure Tokai Carbon "against all risks of physical loss or damage" to its property except where otherwise excluded by the Policies' terms.

26.    Further, the Policies provide for recovery of lost income "directly resulting from necessary interruption of business caused by destruction of or damage to real or personal property covered" by the Policies.

---

[1] When denying coverage for Tokai Carbon's losses, the Insurers additionally contended that the losses constitute two separate occurrences—one for each fan explosion. Regardless of whether that is accurate, the defendant Insurers issued policies during the relevant time periods and would owe coverage.
[2] The policy term at issue was extended by endorsement from its original expiration date of December 31, 2022 to March 1, 2023.
[3] The 2021 Policies and the 2022 Policies all together shall be referred to as the "*Policies*."

**PLAINTIFF'S AMENDED COMPLAINT**                                                                                               Page 7

27. The Policies exclude coverage for losses incurred in the form of rectifying workmanship or design defects, however, they expressly preserve coverage for "resulting damage" such defects cause.

28. With no identifiable cause of the Fans' catastrophic damage that would be excluded under the Policies, Tokai Carbon sought coverage from the Insurers for its losses. This included its losses arising from its inability to produce carbon black at the Borger Facility as a result of the facility's physical damage.

29. After well over a year of having received notice of Tokai Carbon's claim, the Insurers hired a forensic engineer, EFI Global Inc. ("**EFI**"), to evaluate the cause of loss.

30. Following its analysis, EFI went on to issue a root-cause report containing its conclusions about the root cause of the Fans' explosion.

31. EFI concluded that the physical design of the system's upstream ducts and heating components resulted in an unequal temperature distribution and flow of flue gas, which directed heat disproportionately downstream at one of the system's Fans, resulting in one Fan being subjected to temperatures in excess of 1000°F—approximately 200°F beyond the Fans designed tolerance and approximately 250°F over the system's intended operating temperature.

32. Critically, EFI did *not* conclude that the fans exploded due to a defect in the fans themselves, nor did it conclude that it was a design error not to include fans with an >1000-degree heat rating so as to withstand the extreme heat to which EFI concluded they were subjected.[4]

---

[4] Nor did it indicate that doing so would be a reasonable manner of addressing the heat-related issues EFI identified. In fact, EFI acknowledged that after adjustments were made to other upstream components of the system to alter the distribution of heat, no further fan explosions occurred.

**PLAINTIFF'S AMENDED COMPLAINT**   Page 8

33. Instead, EFI concluded that Tokai Carbon's losses were the result of a latent design defect pertaining to different, upstream equipment, which resulted in the physical destruction of other downstream equipment—i.e., the Fans.[5]

34. Tokai Carbon does not adopt EFI's conclusions, but it does agree there is no defect associated with the Fans themselves. As such, regardless of whether EFI's root-cause analysis is correct, the Policies provide coverage. This is because even if a design or workmanship defect existed with respect to the system's heating equipment, the physical damage for which Tokai Carbon seeks coverage is merely the "resulting damage" of that defect. And the Policies expressly cover such "resulting damage."

**B.  The Insurers engage in a delay campaign, culminating in a wrongful coverage denial that defies their own Policies' terms and the conclusions of their own engineer.**

35. To aid EFI and the Insurers in their investigation, Tokai Carbon sent its own root cause analysis report to EFI in October of 2023, held discussions with EFI in December 2023 about its losses, and responded to information requests when made. And yet, despite Tokai Carbon's efforts to provide EFI and the Insurers with the information needed to timely investigate this claim, EFI did not issue its report until almost a year later, on August 29, 2024.

36. Finally, one month after EFI submitted its report, and nearly three years after Tokai Carbon submitted its claim to the 2021 Insurers, the 2021 Insurers provided Tokai Carbon with their coverage determination. On October 7, 2024, they wrote Tokai Carbon, denying coverage for all losses under the Policies.[6]

37. In their denial letter, the 2021 Insurers claimed that the Policies did not cover Tokai Carbon's losses because they were supposedly the result of a "faulty design."

---

[5] Both the 2021 Insurers and the 2022 Insurers adopted the conclusions of EFI.
[6] Explained below, the 2022 Insurers eventually adopt the conclusions and rationale described in this October 7, 2024 denial letter and deny coverage on the same basis.

38. The Insurers' denial, however, is inconsistent with the Policies' clear terms and their own engineer's conclusions.

39. Although the Policies exclude costs to correct design defects in insured property, they expressly provide coverage for physical damage *that results* from such defects.

40. Even accepting EFI's conclusion that there is a defect within the upstream components of the system, there is no defect within the Fans themselves or the additional property damaged by the Fan's explosions. All of Tokai Carbon's losses are therefore covered "resulting damage"—even under the conclusions of the Insurers' own engineer.

41. In addition to denying coverage outright, in correspondence with the Insurers' adjuster, and among counsel following the 2021 Insurers' denial, the 2021 Insurers insisted that Tokai Carbon's losses constituted two separate occurrences, with the first fan failure on October 2, 2021 constituting one occurrence under the 2021 Policies, and the second fan failure on June 26, 2022 constituting a separate occurrence under the 2022 Policies.

42. On April 28, 2025, to preserve any and all rights consistent with the Insurers' insistence that two occurrences exist, Tokai Carbon provided notice under the 2022 Policies. It did so in part because while every Insurer under the 2021 Polices also insured Tokai Carbon under the 2022 Policies, the 2022 Policies also included an additional insurer: National Union Fire Insurance Company of Pittsburgh, PA.

43. The 2022 Insurers (which include the same Insurers under the 2021 Policies) went on to issue a reservation of rights letter claiming to be "investigating" whether the losses are covered under the Policies.

44. In that letter, they also contended that Tokai Carbon was somehow "shifting course" by presenting the claim as separate occurrences, which may "prejudice" the 2022 Insurers

due to the timing of the notice. They raised this supposed defense to coverage despite all but one of the 2022 Insurers having previously insisted two occurrences exist—one of which fell under the subsequent policy year.

45. Eventually, on July 3, 2025, the 2022 Insurers sent a declination of coverage letter to Tokai Carbon, wherein they adopted their own coverage determination made under the prior policy year and again cited the "faulty design" exclusion as a basis to deny coverage. This, despite having previously claimed that the timing of their notice somehow prevented them from assessing coverage in the first place, and their supposedly needing time to perform an independent investigation of the loss they had already investigated.

46. In the end, despite Tokai Carbon's efforts to explain to the Insurers that its losses were at a minimum "resulting damage" covered by the Policies, as EFI's report supports, the Insurers continued to deny Tokai Carbon coverage, necessitating this lawsuit.

### III. CAUSES OF ACTION

**A.  Breach of Contract**

47. The foregoing allegations are incorporated herein by reference.

48. The Policies are valid and enforceable contracts.

49. Tokai Carbon is an insured under the Policies.

50. The Borger Facility is an insured property under the Policies.

51. The Policies insure Tokai Carbon against losses arising from property damage to insured property.

52. Tokai Carbon's covered losses include, but are not limited to, losses associated with the repair of its damaged property and those arising from Tokai Carbon's inability to conduct business due to such property damage, which includes Tokai Carbon's lost profits.

53. The Insurers are obligated to compensate Tokai Carbon for its covered losses arising from the above-described physical damage at the Borger Facility.

54. The Insurers breached their contracts with Tokai Carbon (i.e., the Policies) by, among other things, denying their coverage obligations to Tokai Carbon under the Policies for the losses described above.

55. Tokai Carbon has satisfied all conditions precedent to coverage under the Policies, including, but not limited to, by expeditiously working to restore its damaged property and by reasonably cooperating with the Insurers' investigation.

56. As a result of the Insurers' breach, Tokai Carbon has sustained substantial damages in the form of its uncompensated, covered losses.

**B.    Notice of Intent to Pursue a Claim under Chapter 541 of the Texas Insurance Code.**

57. The foregoing allegations are incorporated herein by reference.

58. Pursuant to Section 541.154 of the Texas Insurance Code, Tokai Carbon hereby provides notice of its intent to pursue a claim against the Insurers under Section 541 of the Texas Insurance Code by amending this suit after 60 days.

59. The Insurers have engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

60. The Insurers have violated Chapter 541 of the Texas Insurance Code by, among other things (1) refusing to pay covered amounts regardless of whether other amounts may be reasonably in dispute, (2) failing to promptly provide to Tokai Carbon a reasonable explanation of the basis in the Policies, in relation to the facts or applicable law, for the Insurers' denial of its claim, and (3) failing within a reasonable time to affirm or deny coverage of its claim to Tokai Carbon.

61.     Explained above, the Insurers delayed rendering a decision on coverage for over two years to engage in a dilatory investigation regarding the cause of loss despite the obviousness of the Policies' "resulting damage" exception applying should any defect be found to exist.[7]

62.     Additionally, the Insurers' reasons given for denying Tokai Carbon coverage lack any basis in fact and are even contradicted by the conclusions of their own forensic engineer.[8]

63.     Moreover, as further evidence of the Insurers' bad faith conduct, the 2022 Insurers claim they may be "prejudiced" based on untimely claim notice despite the fact that (1) the 2022 Insurers are the same as those subscribing to the 2021 Policies (except for one additional insurer) and have therefore had notice of Tokai Carbon's losses for years, (2) Tokai Carbon provided notice under the 2022 Policies because of the Insurers' insistence that the losses constitute two, separate occurrences under the two policy years, and (3) the 2022 Insurers adopted the prior year's coverage denial wholesale (relying on the same EFI report and policy exclusion).

64.     As a result of the Insurers' violation of Chapter 541 of the Texas Insurance Code, Tokai Carbon has sustained substantial damages, including the denial of covered benefits and payments due under the Policies.

65.     For these same reasons, it is also clear the Insurers' violations were committed knowingly, warranting an award of up to three times Tokai Carbon's actual damages.

C.     **Breach of the Duty of Good Faith and Fair Dealing**

66.     The foregoing allegations are incorporated herein by reference.

---

[7] Even if there were a design error as to the Fans themselves, Texas law makes clear that only the cost to rectify the design error is excluded under policies with "resulting damages" (a/k/a "ensuing loss") exceptions. Any resulting physical damage, even to the defective component itself, is not excluded. Here, however, EFI concluded other components were defective.

[8] As noted above, the 2021 Insurers and the 2022 Insurers rely on EFI's conclusions as a basis for their denial of coverage.

67. As Tokai Carbon's insurers, the Insurers owe Tokai Carbon a duty of good faith and fair dealing in connection with the handling of Tokai Carbon's claims under the Policies.

68. The Insurers have violated their duty of good faith and fair dealing by refusing to provide coverage without a reasonable basis, including by articulating demonstrably meritless coverage defenses in light of the conclusions of their retained engineer EFI, as described above.

69. The Insurers' breach of their duty of good faith and fair dealing has caused Tokai Carbon to suffer considerable actual damages.

70. Given the fact the Insurers have continued to withhold coverage despite having been made aware of the requirements of Texas law and their Policies, and despite the conclusion of their own engineer, which support coverage under the Policies, the Insurers' denial was clearly malicious, fraudulent, and/or grossly negligent.

71. In addition, the Insurers have engaged in senseless dilatory tactics, including the investigation of supposed root causes that have no bearing on coverage given the Policies' "resulting damage" exception.

72. This justifies the imposition of punitive and exemplary damages, in addition to Tokai Carbon's compensatory damages.

D.     **Violation of the Texas Insurance Code's prompt payment statute**

73. The foregoing allegations are incorporated herein by reference.

74. Chapter 542, Section 542.058 of the Texas Insurance Code requires insurers to make prompt payment of claims.

75. Section 542.060 imposes an 18% per annum statutory penalty upon any insurer that breaches its statutory duty to make prompt payment of claims.

76. The Insurers' unjustifiable refusal to pay Tokai Carbon's losses under the Policies violates Chapter 542's prompt payment requirement.

77. Tokai Carbon therefore seeks to recover the maximum statutory penalty available under Chapter 542 of the Texas Insurance Code for delayed payment of claims.

**E.     Attorneys' Fees**

78. The foregoing allegations are incorporated herein by reference.

79. Due to the actions of the Insurers, Tokai Carbon has been required to retain the services of the law firm of Haynes and Boone, L.L.P. Plaintiff has agreed to pay Haynes and Boone, L.L.P. a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to § 38.001 of the Texas Civil Practices & Remedies Code and Chapters 541 and 542 of the Texas Insurance Code, Plaintiff is entitled to an award of reasonable attorneys' fees against the Insurers in an amount to be established at trial.

## IV.     JURY DEMAND

80. Plaintiff hereby requests a jury trial pursuant to Fed. R. Civ. P. 38.

## PRAYER

WHEREFORE, Plaintiff respectfully requests that this Court grant it the following relief:

A.  Judgment awarding Tokai Carbon all damages caused by the Insurers' breach of contract;

B.  Judgment awarding Tokai Carbon all damages caused by the Insurers' violations of Chapter 541 of the Texas Insurance Code, including treble damages for the Insurers' knowing violations of such statute;

C.  Judgment awarding Tokai Carbon damages, including punitive damages, for the Insurers' breach of their duty to good faith and fair dealing;

D.  Judgment awarding Tokai Carbon all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code as well as Chapters 541 and 542 of the Texas Insurance Code;

E.  Judgment awarding pre-judgment and post-judgment interest in the maximum amount allowed by law, including under Chapter 542.060 of the Texas Insurance Code;

F.  Judgment awarding Tokai Carbon all costs of court; and

      G.    Such other and further relief to which Tokai Carbon may be justly entitled.

                Respectfully submitted,

                */s/ Emily L. Buchanan*
                Emily L. Buchanan
                Texas State Bar No. 24101568
                Courtney A. Jones
                Texas State Bar No. 24124067
                HAYNES & BOONE, LLP
                2801 N. Harwood Street, Suite 2300
                Dallas, Texas 75201
                emily.buchanan@haynesboone.com
                courtney.jones@haynesboone.com
                Telephone: (214) 651-5175
                Telephone: (214) 651-5143

                Andrew P. Van Osselaer
                State Bar No. 24110471
                andrew.vanosselaer@haynesboone.com
                HAYNES & BOONE, LLP
                98 San Jacinto Blvd., Suite 1500
                Austin, Texas 78701
                Telephone:   (512) 867-8400
                Telecopier:   (512) 867-8470

                **ATTORNEYS FOR PLAINTIFF,**
                **TOKAI CARBON CB, LTD.**